**Edward Oehler, Appellant, v. Charles Levy, Appellee.**

**Gen. No. 16,461.**

1. CONTEMPT—*when sworn answer does not require discharge.* If the contempt be civil in its nature the sworn answer of the respondent, though *prima facie* entitling him to a discharge, does not require that the court enter a discharge as is the case where the contempt is criminal in character.

2. CONTEMPT—*when respondent not entitled to jury trial.* In a proceeding for contempt for the violation of a remedial injunction, the defendant is not entitled as a matter of right to a trial by jury.

3. CONTEMPT—*what essential to infliction of punishment.* The

court should not exercise its power and impose a fine or a sentence of imprisonment upon a respondent in a proceeding for violating a remedial injunction, unless satisfied by most convincing evidence. of the truth of the charge made.

Bill for injunction. Appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Affirmed. Opinion filed March 12, 1912. Rehearing denied March 26, 1912.

SAMUEL B. KING and JULE F. BROWER, for appellant.

FRED BERNSTEIN and BARKER, CHURCH & SHEPARD, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court.

Suit was brought by the appellant, as complainant, against the appellee, as defendant, for an injunction restraining the defendant from maintaining or permitting to be maintained on his property a stable for horses, of a character claimed to be prejudicial and harmful to the complainant. The character of the injunction finally granted was set forth in this court on a former appeal. Oehler v. Levy, 139 Ill. App. 294. The decision was affirmed by the Supreme Court in Oehler v. Levy, 234 Ill. 595.

. The decree enjoined the defendant "from maintaining or permitting to be maintained upon his property, a stable for horses in such numbers or in such a manner as to produce noise sufficient habitually to disturb the sleep or comfort of the dwellers in the building owned by the appellant which immediately adjoined appellee's building, or as to produce odors or gases deleterious to the health or comfort of the dwellers of his building or so to conduct business on defendant's premises as to cause by the noise and loud talking incident thereto habitual disturbance to the health, sleep or comfort of such dwellers."

The order which we are asked to reverse was an order discharging the rule which had been entered upon

the appellant's (complainant's) petition, requiring the appellee (defendant) to show cause why the defendant should not be punished for contempt of court for disobedience of the terms of the final decree or order heretofore referred to.   There was a hearing before the chancellor upon affidavits, counter affidavits, and reply affidavits.

It is now insisted that the chancellor erred in determining that the injunctional order was not shown to have been violated by the proof submitted to him.   It is unfortunate that the parties did not avail themselves of section 86 of the Practice Act (chapter 110 of the Revised Statutes), and move the court to exercise its discretion and require evidence to be presented by oral examination of the witnesses in open court or before a master in chancery.

The nature of the case is such that it is very difficult to determine the rights of the parties from affidavits. Affidavits are ordinarily prepared by the solicitors, and the language used is their language adopted by the affiants.   If the witnesses had been examined in open court, the court would have been better able to determine their truthfulness, or the lack of it, by their conduct and demeanor on the stand, by the cross-examination, etc.

It has been held that proceedings for contempt in cases like the one before us are civil in their nature, and not criminal (O'Brien v. People, 216 Ill. 354), and for that reason a sworn answer of the defendant is not sufficient to purge him of the alleged contempt, as is the rule in cases where the contempt charged is criminal in its nature.   The case cited is authority upon the further proposition that the constitutional right of a trial by jury is not violated in such cases.

It will hardly be contended, however, that a proceeding which may result in imprisonment or the imposition of a fine upon the defendant is not in its nature at least *quasi* criminal.   In our opinion the court should not exercise its power and impose a fine or a

sentence of imprisonment upon the defendant unless satisfied by most convincing evidence of the truth of the charge. In Powers v. People, 114 Ill. App. 323, it was said: "Even in civil contempts there must be an intention to do wrong and a wilful refusal to comply with the order of the court."

The court had before it the verified petition of the appellant together with affidavits from five individuals; also the verified answer of appellee, together with affidavits of sixteen other persons in support of his answer. The makers of the affidavits in support of the petition were all tenants of the apartment building in question, excepting one, and she was the wife of a tenant. Two at least, of the affidavits in support of the answer of appellee were made by persons who were or had been occupants of the appellant's apartment house; the other affidavits were made by persons living near that building. Several of the affidavits merely relate to measurements. Taking the proof as a whole, we are unable to reach any other conclusion than did the learned chancellor before whom the matter was litigated.

The contention of the appellant is that the business itself is a nuisance, and that where such an injunction exists as that in the present case, the conduct of such a business must be regarded as contempt of the court which issued the injunction. So to hold would be, in our opinion, to enlarge the scope of the injunctional order. That order does not prohibit the defendant from maintaining a stable, but merely from maintaining a stable for horses in such numbers or in such a manner as to produce noise sufficient habitually to disturb the sleep or comfort of the dwellers in the building owned by appellant (complainant), or as to produce odors or gases deleterious to the health or comfort of such dwellers of the building, or to conduct the business in such a manner as by the noise and loud talking incident thereto to cause habitual disturbance to the health, sleep or comfort of such dwellers.

The affidavits filed by appellant tended very strongly to show that the injunctional order had been disobeyed. On the other hand, the affidavits filed by the appellee, although in large part necessarily negative in character, to the effect that affiants had not been disturbed, etc., tended strongly to support the contention of appellee that he had remedied conditions in and about his stable,—had caused a cessation of the noise and loud talking which had occurred prior to the filing of the bill, etc.

When the case was in the Supreme Court a cross-error was assigned to the effect that this court erred in not directing a decree enjoining Levy from keeping any horses in the building.  After stating that while the direction to the Superior Court by this court, when incorporated in the decree, practically prohibited Levy from maintaining his stable upon the premises, theoretically it does not, the Supreme Court used this language:  "The Appellate Court was not, as it states in its opinion, prepared to hold, as a matter of law,— and neither is this court,—that a stable may not be kept in a residence district of a large city in such manner that it would not be regarded as a nuisance, and for that reason it refused to direct the Superior Court to enter a decree enjoining the appellant from keeping any horses in his building or upon his premises. In this we think there was no error."

The chancellor found upon the evidence before him that it was possible for the appellee to maintain a stable in a manner not inhibited by the injunction.

For the reasons stated the order entered by the Superior Court is affirmed.

*Affirmed.*