## STATE ex rel. CONLEY et al. v. PARKS.

No. A-5835. Opinion Filed Oct. 17, 1925.
(239 Pac. 941.)

T. M. McCombs, for petitioners.

The Attorney General, for the State.

EDWARDS, J. This is an original proceeding in mandamus to require Hon. J. T. Parks, District Judge of the First Judicial District, to certify his disqualification in an action pending in the District Court of Sequoyah county, wherein the state of Oklahoma prosecutes the petitioners Bess Conley and J. M. Conley on a charge of murder. In the petition it is alleged that the said respondent as district judge is biased and prejudiced against the petitioners so they cannot receive a fair and impartial trial. They further allege that the petitioners have had two trials in said Sequoyah county, in each of said trials a special judge presided, and each of which resulted in a mistrial. It is alleged: That petitioners are prosecuted on a charge of murdering one John Horn, and that the respondent has been a lifelong friend of the family of the deceased, and especially a personal friend of Bud Horn, brother of the deceased, who has taken a lead in the prosecution of said case. That since the said trials the Hon. H. D. Pitchford, county attorney of Sequoyah county, moved the court to dismiss said action for the reason that in his judgment a conviction could not be had, and that another trial was a useless expense. Thereupon the respondent presiding over the court at the time became angry and severely criticized the county attorney, and when petitioners' counsel undertook to say something also criticized them, and in open court and from the bench stated that he did not care what the county attorney thought about the case; he did not believe the relatives of the deceased wanted the case dismissed. That he had personally talked with them about the case, and from his investigation of the case thought the petitioners could be convicted. That he would get in communication with the relatives of the deceased and tell them to get the case ready for trial. That the trial judge went to his chambers and wrote a

letter to said Bud Horn, asking that he come down that he might discuss the case with him. That said Bud Horn did come down, and that the respondent discussed the case in the chambers of said respondent and upon numerous other occasions. That thereafter respondent was in the town of Stilwell, and there approached E. B. Arnold, who is an attorney at law and is related to the deceased, and discussed the merits of the case with the said Arnold, and told the said Arnold that if he would promise to prosecute said case as it should be prosecuted he would appoint him as special county attorney in the case. That said Arnold formerly had been judge of the district court of said district, and by reason of relationship to the deceased had certified his disqualification to preside in said cause. That said respondent following said conversation at Stilwell with said Arnold, and without any conference with the county attorney and without knowledge or information to the petitioners herein, appointed said Arnold special county attorney, and entered the same on the judge's trial docket. Then follow allegations touching the setting of the case for trial and continuances at different times, in which it is inferentially sought to show that petitioners had not been treated fairly. It is then alleged: That at one time it was agreed that the case be continued until September 21, 1922, but counsel for the petitioners at that time stated that he would not under any consideration, after the court's attitude in the case, be placed at the court's mercy, and while he would agree to continue the case, he was going to have his witnesses there on the 21st day of September and be ready for trial, and on the morning of September 21st, when court convened, the county attorney stated to the court that the case would be continued. Then the respondent again flew into a rage, and severely criticized the counsel for petitioners and the county attorney, and from the bench ordered the clerk to get Judge Arnold on the telephone stating that the case had been set for trial,

and because these petitioners were not ready was no excuse for it being continued; at which time the respondent was informed that petitioners were present with their witnesses and counsel and were ready for trial.

The respondent, by telephone, in the hearing of the jury and other parties, in a very angry manner, said to said Arnold:

"You promised me that you would prosecute this case, and that was the reason I appointed you, and I want you to get down here by 1 o'clock and do as you promised."

The respondent then passed the matter until 1 o'clock, and said Arnold came down from Stilwell and immediately was met at the courthouse by Bud Horn, brother of the deceased, and they went to the respondent's chambers, or vault in the clerk's office, and at this time the respondent was in the courtroom talking to the county attorney and other attorneys there, and said Bud Horn came into the courtroom and called respondent out, and said Bud Horn, respondent, and said Arnold had a lengthy consultation in reference to the case in the respondent's chambers. After discussing the matter for some time, respondent and Bud Horn remained in respondent's chambers, and Arnold was sent to confer with counsel for petitioners and the county attorney. Said Arnold stated that respondent had a proposition to make that if counsel would agree to continue the case, and would file a motion to disqualify him, he would continue it for the term; that if counsel did not like that or did not want to do that, then he was going to continue it for a few days more and give the state some time, and order the jury back and try the case.

Petitioners further allege that they have presented an application and motion to respondent to disqualify for the reason herein set out and respondent has denied said motion. Upon the allegations as set out and others contained therein petitioners pray that this court issue a writ of man-

damus requiring respondent as district judge to disqualify. Upon the petition so filed, verified, and supported by affidavits, an alternative writ of mandamus was issued ordering the respondent to show cause why he should not be disqualified, and the respondent has filed a response which is in substance that he is not conscious of any bias or prejudice against the petitioners; that they are strangers to him, and that, while respondent has endeavored for more than a year to bring said cause to trial, has thus far been unsuccessful. Then follow allegations explanatory of certain orders of continuance and assignments for trial, and an admission that a petition to disqualify was presented to him and denied, and that if not disqualified he can try said case fairly and impartially. Section 2633, Comp. Stat. 1921.

There is no denial of the allegations of statements made by the defendant from the bench, nor the writing to the brother of the deceased, Bud Horn, nor the consultations and statements alleged as made in open court and in chambers and to relatives of the deceased, and we conclude that respondent intends thereby to admit the allegations as made.

The question for our determination then is: Do the allegations disclose that respondent herein entertains bias or prejudice which would disqualify him as presiding judge in the trial of the petitioners? Section 6, art. 2, of the Bill of Rights, among other things, provides that right and justice shall be administered without sale, denial, delay or prejudice. Prejudice to disqualify a trial judge has been held to mean a personal prejudice against him. Lewis v. Russell, 4 Okla. Cr. 130, 111 P. 819; Saddler v. Crump, 30 Okla. Cr. 157, 235 P. 263.

Prejudice is a state of mind which is ordinarily not capable of being proven by direct and positive evidence. It can generally be proven only by the circumstances, environ-

ment, association, relationship, and conduct of the person who entertains it. It is often not known to be held by the person entertaining such prejudice; that is to say, one may have a prejudiced state of mind upon a subject, against an idea, cause or person, and be wholly unconscious that he had any prejudice. In fact, upon casual thought, we are aware that many persons are prejudiced upon public questions, in matters of politics or religion, or on many other subjects, and by reason of such prejudice incapable of giving a dispassionate consideration to such question, and at the same time be totally unconscious that he is prejudiced, and would be quick to repudiate a suggestion that his state of mind is other than fair and open. We are sure that the learned district judge, respondent in this case, is not conscious of any prejudice against the petitioners, and that he had no doubt of his ability to fairly and impartially preside at the trial; but in the light of the allegations made in the petition and the failure of the respondent to deny them, we think there is such a showing as entitles the petitioners to a change of judge, being mindful of the rule announced by this court in the case of Ex parte Ellis, 3 Okla. Cr. 220, 105 P. 184, 25 L. R. A. (N. S.) 653, Ann. Cas. 1912A, 863, where it was said:

"* * * The framers of our Constitution guarded with special care our judiciary and tried to place it above suspicion of unfairness, passion, or prejudice, so that public confidence in our courts would not be shaken, and provided that right and justice should be administered without prejudice. By virtue of this constitutional provision, who can doubt or question the absolute and unqualified right of the citizen when called to answer in a court of justice to demand that his trial shall be before an impartial judge and by impartial jurors? Any other doctrine would place the rights of the citizen which were intended to be protected by this constitutional provision at the mercy or control of the court or judge thereof. * * *"

For the reasons assigned, the application for change

of judge should have been granted by the respondent, and, the respondent having failed to disqualify, the writ of mandamus is awarded.

BESSEY, P. J., and DOYLE, J., concur.