THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANTHONY
ROBINSON *et al.*, Defendants-Appellants.

(No. 57154;

First District (2nd Division)—March 20, 1974.

Frederick F. Cohn, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Elmer C. Kissane, Randall T. Sims, and James Truschke, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

In a seven-count indictment, defendants Anthony Robinson and Kenneth Simmons, together with one David Goss who is not involved in this appeal, were jointly charged with murder, armed robbery, aggravated battery and unlawful restraint. Goss was tried alone and convicted. A short time later, defendants pled guilty to murder, armed robbery and aggravated battery. Robinson was sentenced to serve concurrent terms of 25 to 100 years for murder; 5 to 10 years for armed robbery and aggravated battery. Simmons was sentenced to serve concurrent terms of

15 to 40 years for murder; 5 to 10 years for armed robbery and aggravated battery.

Thereafter, defendants, represented by a new lawyer, filed a timely motion to withdraw their pleas of guilty. The motion was denied. They then took a direct appeal to the Illinois Supreme Court on the ground that their case contained constitutional questions which gave that court jurisdiction. However, on motion of the Attorney General, the appeal was transferred to us for disposition. Thus, we are asked to review issues which are raised from procedural events which happened the day defendants pleaded guilty to the charges against them. We will discuss these in the order of their occurrence.

On February 10, 1971, defendants and Goss were in court for trial. Goss and his lawyer were ready. Defendants, however, were not, because their lawyer was occupied in another court. Therefore, at their request, their cases were continued; but the trial court proceeded to hear, as against Goss, the same charges that were pending against defendants. The record shows that after hearing evidence which proved the conduct of all the indictees, the trial judge said:

> "The Court has listened to the testimony of the witnesses for the State and the defendant in this case of David Goss, age 18. There isn't any question in the Court's mind that the charge of murder was proven insofar as Mr. Robinson [the Anthony Robinson in this case] is concerned. I wouldn't say that that [the killing alleged in the indictment] should be considered murder; that should be considered an execution. Robinson, from the testimony that I heard, was an executioner. And the deceased didn't have a prayer of a chance.  *  *  *  [I]f three gentlemen walked into a bank with the intention of robbing a bank, and one of the gentlemen shot the guard or a teller in the bank, even though the intention of the other two was to just rob the bank, all three are guilty of murder.  *  *  *"

On February 18, defendants were in the courtroom of the same judge. Their lawyer told him that on the day before, from a copy of a report of proceedings, he learned of and shared with defendants the conclusions concerning their guilt which the trial judge reached when he heard the evidence against Goss. The lawyer explained that his clients had decided to waive a jury and take a bench trial. However, he said, because of the conclusions concerning their guilt which the trial judge had reached, defendants feared that they could not receive a fair trial before him. Therefore, on behalf of each defendant, and on the ground that the judge was prejudiced against them, the lawyer said he was filing a motion for substitution. The motions were filed. A hearing was held,

during which the trial judge admitted he made the statements attributed to him. At the conclusion of the hearing, the motions were denied. From this ruling, defendants present the issue whether denial of their motions for substitution of judge was error.

■■ Defendants' motions were filed more than ten days after the cause was placed on the trial call of the judge. Substantively and procedurally, they were governed by the subsection of the statute which provides that "* * * any defendant may move at any time for substitution of judge for cause, supported by affidavit. Upon the filing of such motion the court shall conduct a hearing and determine the merits of the motion." (Ill. Rev. Stat. 1969, ch. 38, par. 114—5(c).) Therefore, the right to substitution of judge under this subsection is not absolute; the merits of a motion under its provisions must be established at a hearing. (*People v. Peter,* 55 Ill.2d 443, 303 N.E.2d 398.) This being so, mere filing of such a motion does not affect a trial court's power or authority. (Compare *People v. Kostos,* 21 Ill.2d 451, 173 N.E.2d 469; *People v. Davis,* 10 Ill.2d 430, 140 N.E.2d 675.) After a hearing, a court's ruling on such a motion, even if erroneous, is not a jurisdictional defect. When a court has power to hear, it has the power to make a wrong as well as a right decision. (*Pope v. United States* (1944), 323 U.S. 1, 14, 89 L.Ed. 3, 65 S.Ct. 16; *Fiore v. City of Highland Park,* 93 Ill.App.2d 24, 235 N.E.2d 23; I.L.P. Courts § 11.) In this case, since there was a hearing, the proceedings subsequent to the court's ruling were not void. (*People v. Lagardo,* 82 Ill.App.2d 119, 226 N.E.2d 492; compare *People v. Ethridge,* 78 Ill.App.2d 299, 223 N.E.2d 437; *People v. Morrow,* 100 Ill.App.2d 1, 241 N.E.2d 680; see Annot., 21 A.L.R.3d 1369.) It was for defendants, however, to prove that they had cause for substitution of judge. The question, then, is whether proof that the trial judge, after hearing evidence against a co-defendant, but before hearing evidence against defendants, concluded that they were guilty, showed prejudice which disqualified him to sit as the judge in their case.

■■ Prejudice is a condition of the mind that imports the formation of a fixed anticipatory judgment as distinguished from opinions which yield to evidence. (*Schipper & Block, Inc. v. Carson Pirie Scott & Co.,* 122 Ill.App.2d 34, 41, 256 N.E.2d 854.) Ordinarily, prejudice is not proved by direct and positive evidence; it is proved by circumstances, environment, association, relationship, and conduct of the person who entertains it. (*State ex rel. Conley v. Parks* (1925), 32 Okla. Crim. 61, 239 P. 941.) Recognizing this fact, it is universally held that a judge who, before hearing a criminal case expresses conviction that the accused is guilty, cannot give that accused a fair and impartial hearing, and is thereby disqualified to sit as a trial judge. See *Stamp v. Commonwealth*

(1922), 195 Ky. 404, 243 S.W. 27; *Castleberry v. Jones* (1940), 68 Okla. Crim. 414, 99 P.2d 174; *Calhoun v. Superior Court of San Diego County* (1958), 51 Cal.2d 257, 331 P.2d 648; compare *Noel State Bank v. Blakely Real Estate Improvement Corp.*, 321 Ill.App. 594, 53 N.E.2d 621; *Evans v. Superior Court of Los Angeles County* (1930), 107 Cal.App. 372, 290 P. 662.

In the case before us, the trial judge, from evidence he heard against David Goss, concluded that the defendant Robinson mercilessly shot and killed the victim of the homicide during a robbery. With understandable indignation, the judge characterized the conduct of Robinson as that of an executioner, and that of Simmons as a guilty party because he was accountable. When told that defendants had learned of his conclusions, the trial judge did not deny reaching them nor did he qualify their meaning in any way. In fact, in a later colloquy with defendants' counsel concerning the matter, the judge said, "I heard the testimony. I came to that conclusion and my statement was correct." This was an acknowledgement that before he had heard the case against them, the trial judge had acquired a personal conviction that defendants were guilty. "A fair trial under due process of law requires an impartial judge free from personal conviction as to the guilt or innocence of the accused." (*People ex rel. Przyblinski v. Scott*, 23 Ill.App.2d 167, 170, 161 N.E.2d 705, *aff'd* 19 Ill.2d 500, 167 N.E.2d 194.) Therefore, under the circumstances of this case, it is our judgment that denial of defendants' motion for substitution of judge was error. See *People v. Ehrler*, 114 Ill.App.2d 171, 252 N.E.2d 227; *People v. Arnold*, 76 Ill.App.2d 269, 222 N.E.2d 160.

However, defendants later pleaded guilty. They now contend that the guilty pleas were invalid because (1), they were not admonished, as required by Supreme Court Rule 402(a)(4) of their right to confront witnesses; (2), the trial court abused its discretion when it denied a motion for continuance which their lawyer made in order to prepare their defense; (3), their pleas of guilty were coerced by the adverse rulings the trial court made on their motions for change of judge and the motion for continuance. Therefore, we are required to decide whether it was an abuse of discretion for the trial court to deny defendants' motion for a continuance; whether, as required by Supreme Court Rule 402(a)(4), defendants were properly admonished before they pleaded guilty to the charges against them; and whether their pleas of guilty were voluntary.

■■ Our code of criminal procedure provides that "[a]ll motions for continuance are addressed to the discretion of the trial court and shall be considered in the light of the diligence shown on the part of the movant." (Ill. Rev. Stat. 1969, ch. 38, par. 114—4(e).) The right to a

continuance, even for the purpose of preparing for trial, is not absolute; its grant or denial is a matter left to sound judicial discretion. (*People v. Wilson*, 29 Ill.2d 82, 193 N.E.2d 449; *People v. Davis*, 45 Ill.2d 514, 261 N.E.2d 314.) The record shows that defendants' discovery motion had been answered. A bill of particulars had been given them. Four previous continuances had been granted at their request. And it appears that the trial court took into account the proven trial ability and other professional obligations of the lawyer representing defendants. In our judgment, the trial court did not abuse its discretion when it denied defendants' motion for a continuance. (See *People v. Young*, 6 Ill.App.3d 119, 285 N.E.2d 159; *People v. Harvey*, 5 Ill.App.3d 499, 285 N.E.2d 179; compare *People v. Johnson*, 110 Ill.App.2d 292, 249 N.E.2d 194.) And as to the trial court's admonitions to defendants before their guilty pleas were accepted, we find them adequate and in substantial compliance with the rule of the Illinois Supreme Court. (See *People v. Miller*, 3 Ill.App.3d 712, 279 N.E.2d 64; *People v. Charleston*, 14 Ill.App.3d 452, 302 N.E.2d 687 (Abstract opinion).) We turn, then, to the question whether defendants' pleas were voluntary.

■■ The record shows that after the trial judge denied defendants' motions for change of judge, no further reference was made to this fact either by defendants or their counsel. After the motion for continuance was denied, the only reference to the ruling was counsel's comment, "I just wanted to express my position, Judge." Thereafter, defendants requested the court's permission to talk with members of their family. The permission was granted. Then, defendants conferred with their counsel. A short time later, without any hint or suggestion of any kind that the prior adverse rulings on their motions were influencing their conduct, defendants, by their counsel, moved to withdraw their not guilty pleas and enter pleas of guilty to murder, armed robbery and aggravated battery. After acknowledging the seriousness of defendants' request, the trial judge admonished them concerning the consequences of their pleas on their right to a jury trial. Then, he advised them about the sentences they could receive. On several occasions the trial judge inquired of each defendant whether his pleas were voluntary. Each time, defendants assured the trial judge that they were. Neither in their responses nor in the conduct of their lawyer was there any suggestion that defendants were acting under coercion. We conclude that defendants' pleas of guilty were voluntarily made, with the advice of experienced counsel and with the benefit of admonitions given them by the trial judge.

■■■ A guilty plea is a break in the chain of events which precedes it in the criminal process; therefore, when a criminal defendant solemnly admits in open court that he is in fact guilty of the offense with which

he is charged, he cannot thereafter raise independent claims that prior to entry of the guilty plea he was deprived of statutory or constitutional rights. (See *Tollett v. Henderson* (1973), 411 U.S. 258, 36 L.Ed.2d 235, 93 S.Ct. 1602.) Consistent with this broad general principle, we have held that a plea of guilty, voluntarily and understandingly made, waives all non-jurisdictional defects and errors. (*People v. Jones,* 7 Ill.App.3d 146, 287 N.E.2d 227; *People v. Krause,* 7 Ill.App.3d 970, 289 N.E.2d 89 (Abstract opinion).) It follows that the error which the trial court made when it denied defendants' motions for substitution of judge was waived when defendants voluntarily and understandingly pled guilty.

■■ There remains one issue for our review; whether, on the facts shown in the record, the multiple sentences for armed robbery and aggravated battery were proper. Although defendants' argument on this issue is somewhat cryptic, we gather the claim that the two offenses for which the multiple sentences were imposed arose out of the same conduct. (See *People v. Schlenger,* 13 Ill.2d 63, 147 N.E.2d 316; *People v. Scott,* 43 Ill.2d 135, 251 N.E.2d 190.) However, our examination of the facts to which defendants stipulated convinces us that the armed robbery and the aggravated battery against the victim in question were two separate and distinct crimes, each punishable by separate and distinct sentences. (See *People v. Johnson,* 44 Ill.2d 463, 256 N.E.2d 343; *People v. Chambers,* 15 Ill.App.3d 23, 303 N.E.2d 24; Ill. Rev. Stat. 1969, ch. 38, par. 1—7(m).) Therefore, the multiple sentences were proper. The judgments are affirmed.

Affirmed.

HAYES, P. J., and STAMOS, J., concur.